Miller, J.
The plaintiff’s evidence in support of her title’is as follows:
1. A deed from Francis Wier to Zara W. Arnold, dated June 14, 1856, purporting to convey the premises in question.
2. A plat of “ Arnold & Young’s addition to the city of Clinton,” including the lots in question.
3. A judgment in favor of plaintiff against Zara W. Arnold, rendered June 10, 1859, for the sum of $275.49, and costs.
' 4. Execution on said judgment, and return showing levy and sale of the premises in controversy to the plaintiffj May 16, 1861.
5. The sheriff’s deed to the plaintiff in pursuance of such sale, July 16, 1862.
6. A trust deed from Zara W. Arnold and wife, to D. Gray^ as trustee of plaintiffj dated October 1, 1858, on lots 3, 4 and 5, in block 4, and lots 16 and 17 in block 7.
7. A deed of D. Gray, as trustee, on a sale made under said trust deed, conveying to plaintiff the lots included in the trust 'deed.
8. Certificates of redemption from tax sales of the lots in controversy since the tax sale of 1862.
9. Receipts for the payment of all taxes on the premises since October 6, 1862.
10. Evidence tending to show that a deed absolute on its face from Zara W. Arnold and. wife, to Dwight Budd, dated May 17, 1859 (prior to the rendition of the flaimtAff's judgment against Arnold!), was given to secure a loan of money, and, therefore, only a mortgage.
*531 11. Plaintiff also gives in evidence a certain trust deed or mortgage from Arnold to Mary A. Perry, and one also to W. G. Haniford, and a judgment in favor of Garvin against Arnold, all of which are prior liens.
The evidence further shows that all of the lots claimed by the plaintiff (except three) were sold for taxes in 1863, purchased by ¥m. F. Ooan, upon which sales he obtained treasurer’s deeds in 1866.
It further shows that many of the lots claimed by plaintiff were conveyed by Arnold, through whom plaintiff claims title, to one Peed prior to any claim of title of plaintiff, and that Peed conveyed to Ooan.
It is further shown that the defendant Hayes purchased thirteen of the lots, including the three not sold for taxes to Coan, at a sheriff’s sale on a judgment in favor of Garvin and against Arnold, which was older than the plaintiff’s judgment agaiúst Arnold.
i. taxsaie: clerk. I. The first objection made by appellant to the tax deeds is, that “ the supervisors never directed the clerk of their board to collect the taxes in question.” And in argument we are referred, on this point, to section 748 of Pevision, which requires the clerk of the board of supervisors, under their direction, to attach a warrant under his hand and official seal to the tax list, etc., requiring the treasurer to collect the taxes.
It will be readily observed that it is not the duty of the clerk to collect the taxes, nor the province of the board of supervisors to direct him to do so. The evidence shows that the clerk did attach the required warrant to the tax list for the year these lots were sold, and upon which the tax deeds in this case were executed, but that the board did not direct the clerk to collect the taxes. These facts are shown by the clerk himself, who is examined as a witness for the plaintiff, and in answer to interrogatories put by her counsel.
*532 2.-sale in gross. *531 II. Appellant objects to the validity of the tax deeds, *532 because the smallest portion of any one lot was neither sold nor offered for sale for the taxes due thereon as the law requires.
The tax deeds do not recite the manner in which the lots were offered for sale, but the deputy-treasurer called and examined on this point by plaintiff, testifies that “ the lots were sold separately and offered to the one who would take the smallest portion of the same for the tax, and were sold to that person.”
This was in strict conformity with the statute. Bev., § 766.
3__authority make^newrt° deed. III. It is next urged that the tax deeds show from six to eight lots sold together for a gross sum of taxes due on all of them, and are therefore void.
Where a tax deed embraces several distinct lots or tracts of land which purport to have been sold in mass for a gross sum, it is void on its face. Boardman v. Bourne, 20 Iowa, 134; Furgeson v. Heath, 21 id. 438; Williams v. Heath, 22 id. 519; Ackley v. Sexton, 24 id. 320.
In this case there were two sets of tax deeds, the first set being the ones against which this objection is urged. They do not come strictly within the cases above cited. ■They do not clearly show that the sale was in mass for a gross sum.
They recite the amount of taxes, interest and costs due on each lot separately, and that the purchaser bid such several sums for the several lots at a tax sale then held; that the lots were struck off to him, and that he paid said several sums amounting in the aggregate, etc. But whether these deeds were obnoxious to the rule established by this court we need not determine. The tax purchaser, in order to avoid any such objection that might be made to them, applied in 1868 to the treasurer, who issued new deeds in conformity with the statute, and in accordance with the manner of the sales, showing that the lots were each sold *533 separately. This fact, that the lots were sold separately, is clearly shown by evidence al-hmde.
That the treasurer had authority to make new deeds to the purchaser in accordance with the facts has been decided in McCready v. Sexton, 29 Iowa, 356.
4. — effect of sales. IV. The appellant insists in the next place that the treasurer had no authority to make and deliver cmy of the tax deeds in question.
The evidence shows that the lots were sold for taxes in 1863, for the taxes of previous years, that they were subsequently sold for taxes in several different years, and that the plaintiff redeemed from all of the tax sales except that of 1863, in pursuance of which the deeds in question were executed. The position of appellant is, that the subsequent tax sales divested the interest of the tax purchaser under the sales of 1863.
In this position we cannot concur. Had any of the tax sales after 1863 been suffered to ripen into titles, the interest of the former tax purchaser would have been thereby divested. But, by redeeming from the subsequent sales and not from that of 1863, the appellant assisted the purchaser, under the sales of 1863, to obtain a tax deed under such sales. The mere sale of land for taxes does not abrogate or destroy the rights of a purchaser under a previous sale; at all events, when the purchases are by different persons. It is only where the-subsequent sale ripens into a title that the interest of the first purchaser is destroyed.
A redemption from the subsequent sales protects the previous purchaser from such contingency. It simply does away with the effect of the sale redeemed from, and otherwise makes no change in the title.
5- effeot of redemption. V. It is also claimed by appellant that by her redemption from subsequent tax sales, the prior titles and liens were postponed to hers, that the first tax sale divested ap interests, that the subsequent sales divested *534 the first, and that her redemption from the subsequent sales wiped them out and gave her paramount title. We have just seen that redemption from subsequent sales protected the first and enabled the purchaser to obtain tax deeds under his purchases, so that the appellant gained nothing by making such redemption, nor did the same affect those persons having prior liens to that of appellant.
The evidence shows that the lots not held under the tax deeds are held by Hayes under a sheriff’s deed on the Garvin judgment, which was prior to plaintiffs.
Passing by the defects in the appellant’s title, and the inqiiiry as to her right to attack that of the appellees, wé have noticed each of the objections made by appellant, to the validity of the tax deeds, and find none of them tenable.
The judgment of the district court is therefore
Affirmed.