H. M. JACKSON *et al.* v. LUTHER C. CHALLISS.

1. PUBLICATION — *Costs* — *Void Tax Sale.* If no proof of publication of the notice of sale of real estate for delinquent taxes is ever transmitted to the county treasurer by the printer making such publication, his fees therefor do not become a charge against the county, nor against the real estate, and to include these fees in the amount for which the property is sold at a tax sale will vitiate the sale. (*Fox v. Cross,* 39 Kas. 350, and *Blanchard v. Hatcher,* 40 id. 350, cited, and approved.)

2. ———— *Tax-Sale Notice, Voidable.* City lots were sold at a tax sale on September 16, 1875, for the taxes of 1874, and the final redemption notice stated that they were sold at a tax sale "commenced September 7, and closed September 16, 1875, and that unless such lots were redeemed before the days limited therefor, they will be conveyed to the purchaser." *Held,* That the final redemption notice was indefinite, uncertain, insufficient, and voidable at the election of the owner of the lots. (The case of *Blackistone v. Sherwood,* 31 Kas. 35, cited, and approved.)

3. ———— *Lien for Taxes Paid.* A savings bank organized under the laws of this state held tax deeds in the name of the bank for two city lots sold for non-payment of taxes. The bank made a conveyance to an attorney, under an agreement that he was to have fifteen per cent. of any amount that could be realized for the bank out of said tax deeds. The attorney took possession of the lots, and the original owner brought an action to recover the possession of them. In the action it was adjudged that the tax deeds were invalid. *Held,* That under this state of facts the attorney was entitled to a lien on the lots under § 142 of the tax law, for all the taxes paid by him and his grantor on the lots, with interest, costs, etc.

4. REDEMPTION — *Estoppel* — *Lien* — *Title.* The savings-bank deeds were for a sale for unpaid taxes for the year 1874; the bank paid all the subsequent taxes except the second half of the taxes for the year 1880. The lots were sold for these, and the certificates of sale subsequently assigned to a person who paid the taxes for 1881 and 1882. In August, 1883, the original owner redeemed the lots from the tax sale of 1880, but before this redemption was made the person holding the certificates of sale for the taxes of 1880 assigned them to the bank. One of the attorneys of the bank, authorized by the agreement above set forth between the bank and the attorney, went to the county treasurer's office and received the redemption fund, and surrendered the tax-sale certificates for the taxes of 1880. *Held,* That if an estoppel was created by the reception of the redemption

fund, it applied only to the title of the owner, and did not affect in any manner the existence of the lien created by the statute in favor of a defeated tax claimant for the taxes he had paid, with interest, costs, etc.

*Error from Atchison District Court.*

EJECTMENT. The opinion states the material facts. Judgment for the plaintiff *Challiss*, at the February term, 1885. The defendants, *Jackson* and another, bring the case here.

*Frank Royse*, and *L. F. Bird*, for plaintiffs in error.

*W. W. Guthrie*, for defendant in error.

Opinion by SIMPSON, C.: This action was instituted by Luther C. Challiss in the district court of Atchison county, on the 3d day of September, 1883, to recover possession of lot number one, block number thirty-five, and lot number one, block thirty-six, both in L. C. Challiss's addition to the city of Atchison. The cause was tried before the court without a jury, and conclusions of fact and of law found, and stated by the court as follows:

"1. On March 15, 1858, the plaintiff, Luther C. Challiss, caused to be filed in the office of the recorder or register of deeds of Atchison county, Kansas territory, a map or plat marked 'Challiss's Addition,' the description written on the back thereof being as follows, viz.:

"'The within plat of Challiss's addition to the city of Atchison, containing $20\frac{3}{10}$ acres, and is described as follows: All that part of the northwest quarter of fractional section 6, township 6 south, of range 21, which was not originally laid off into town lots by the Atchison Town Company on the west side of said quarter-section, and not included in the original plat of said town. It is described more minutely as follows: Commencing at a point 315 feet east of the west line and 368 feet south of the north line of said quarter-section, running west 315 feet to the west line, south 2906 feet to the south line, thence east 295 feet, thence north 2906 feet, to the place of beginning. The size of the lots, streets and alleys is marked in figures. The said piece of land is the private property of the undersigned.          LUTHER CHALLISS.'

"Said plat and description were duly acknowledged on the same day, and recorded in said office March 30, 1858, on page 23 of plat-book, but error occurred in recording the same by which the land was described as being in the northeast quarter of said section 6, instead of the northwest quarter thereof.

"2. On November 18, 1858, said Luther C. Challiss caused another map or plat to be filed in said office, marked 'L. C. Challiss's addition to the city of Atchison;' the part of the description on the back thereof which related to the land platted, being as follows, namely: 'The within plat of my addition to the city of Atchison is laid off and composed of all the northeast quarter of section 1, township 6 south, of range 20 east, except that part of the north side which was originally laid off into lots by the Atchison Town Company; and all of that part of the northwest quarter of section 6, township 6, range 21, which was not laid off into lots by said company on the west side of said quarter-section.' This plat and description were signed 'L. C. Challiss,' and acknowledged on the same day, and recorded in said office April 1, 1859, on page 25 of plat-book.

"3. Said plat of March 15, 1858, described twelve blocks — those numbered 2, 3, 4, 5, 6, 7, 8 and 9 being full and regular; block one was divided into two parts by Eighth street — lots 1, 2, 3, 4, 5, 6 and 7 being on the east side, and lot 8 on the west side of said street. Block 10 was fractional, and west of block 9 across Eighth street; and block 12 was fractional, and west of block 7 across Eighth street; blocks 10, 11 and 12 were not subdivided into lots. All other blocks were subdivided into lots.

"In said plat of November 18, 1858, said blocks 2, 3, 4, 5, 6, 7, 8 and 9 were identical with the blocks of the same numbers upon said plat of March 15, 1858, the same together with the lots, streets and alleys remaining unchanged; but that part lying west of Eighth street, being lots 8 and 9, was ignored or disregarded as a part of block 1, and became lot 1 of block 18. New territory was added to said blocks 10 and 11 as they existed by the plat of March 15, 1858, and they were extended further west, but they were not subdivided into lots. Block 12 of first-named plat was also extended further westward into the new territory, and it was subdivided into lots. Block 13, and all other blocks of higher number consecutively up to number 55 inclusive, except said small part of block 18, were new territory, additional to that described in said plat of March 15, 1858. All of the territory in the plat of March 15, 1858, was included in the subsequent plat of November 18, 1858, and no part of the lots in controversy in this action was included in said plat of March 15, 1858.

"4. The territory platted and described as 'L. C. Challiss's addition to the city of Atchison' by said plat of November

18, 1858, has been commonly known as ' Challiss's addition
to the city of Atchison,' and there has never been platted in
said county of Atchison any addition by the name of Challiss,
other than by the two plats of March 15, 1858, and Novem-
ber 18, 1858, respectively, hereinbefore described; and for sev-
eral years all of said blocks numbered 1 to 55, inclusive, and
the subdivision of the same into lots, were described on the
tax-rolls of Atchison county as ' Challiss's addition,' and some-
times by the abbreviation ' C. A.;' and in the years 1874 and
1875 all of said blocks and lots were described on said tax-
rolls as being in ' Challiss's addition,' there being no prop-
erty described for said years on said tax-rolls as in ' L. C.
Challiss's addition.'

" 5. In 1873 and 1874 the plaintiff was the owner in fee
simple of lot 1, block 35, and lot 1, block 36, all in L. C.
Challiss's addition to the city of Atchison aforesaid, and he
has ever since been such owner except as against the tax claim
and tax deeds hereinafter mentioned; and said lots were sub-
ject to taxation in the year 1874, and they have been so sub-
ject to taxation ever since.

" 6. In 1874 said lots were assessed by George W. Graves,
who was the assessor of said city of Atchison and the addition
thereto; but the affidavit returned with the assessment-roll
was 'defective in form, no venue being stated therein, and the
same being in other respects irregular. The following is a copy
thereof:

" ' I, G. W. Graves, do solemnly swear that the return to which this
is attached contains a description of each parcel of real property with-
in the city of Atchison, so far as I have been able to ascertain the same,
and that the values attached to said parcels in said return, as I verily
believe, is the true value for the purposes of taxation. So help me God.
GEORGE W. GRAVES.

" ' Sworn to and subscribed before me, this 6th day of July, 1874.
[Seal of Atchison county.]          C. H. KREBS, County Clerk.'

" 7. The taxes leved upon said lot 1, block 35, for said year
1874 were $9.26, and the three penalties before sale were $1.38,
making a total of taxes and penalties of $10.64. And the
taxes levied upon said lot 1, block 36, for said year 1874,
were $9.81, and the three penalties before sale were $1.47,
making a total of taxes and penalties of $11.28. Said taxes
were not paid, and on September 16, 1875, both of the lots
were offered separately for sale by the county treasurer, but
no person bidding thereon, the county treasurer bid each of
them off for the county of Atchison, said lot 1, block 35, for
the sum of $10.84, and said lot 1, block 36, for $11.48, leav-

ing for costs of advertising and sale of said lots, 20 cents in each. Said lots were advertised for said tax sale as being in 'Challiss's addition,' (not in 'L. C. Challiss's addition,') the sale-notice being as follows:

" 'TAX-SALE NOTICE, OFFICE COUNTY TREASURER, ATCHISON, KAS., July 8, 1875.—Notice is hereby given that the following-described property, or so much of each tract as may be necessary for the purpose, will, on the first Tuesday of September, 1875, and the next succeeding day, be sold by me at public auction at this office for the delinquent taxes and charges thereon of the year 1874, unless the same shall be previously paid.                           M. QUIGG, *County Treasurer.*'

"[Here follows the description of lands and lots.]

"Attached to the notice is the proof of the publication, which is the only proof of the publication of said notice on file in the office of the county clerk, (and there is no proof in the office of the county treasurer,) and no other evidence of publication of said notice was given on the trial; said proof so filed in the office of the county clerk (without date or indorsement of filing) being as follows:

" 'OFFICE OF THE COUNTY CLERK, ATCHISON COUNTY, KANSAS — ATCHI-SON, KANSAS, August 16, 1875.—I, F. J. Wendell, business manager of the Atchison *Weekly Champion,* a weekly newspaper, and the official paper of Atchison county, and published in the city of Atchison, Kansas, a newspaper of general circulation in said county, and the annexed tax-sale notice dated treasury office, July 8, 1875, for the aforesaid county, was published in said *Weekly Champion* for four consecutive weeks, commencing July 24, 1875, and ending August 14, 1875, inclusive.
                                        F. J. WENDELL.

" 'Sworn to and subscribed before me, this 16th day of August, 1875. [Atchison County Court.  Seal.  Atchison, Kansas.]
                        CHAS. H. KREBS, *County Clerk.*
                        S. H. KIMBALL, *Deputy.*'

"8. On August 14, 1875, the Atchison Savings Bank was, and ever since said time it has been, a banking corporation duly organized and existing under the laws of this state relating to savings banks, with its place of business at Atchison, in Atchison county, Kansas, and with Richard A. Park as its cashier. One Henry Jacobs had built certain sidewalks in said city of Atchison, then a city of the second class, along certain lots, including those in controversy in this action, and said city on said day caused to be issued and delivered to him nine certain written evidences of indebtedness called 'sidewalk bonds,' a copy of one of which is as follows:

" '$28.50.—SIDEWALK BOND.—No. 301.—1875.—THE CITY OF ATCHISON, STATE OF KANSAS.—*To the Treasurer of the City of Atchison:* Pay to Henry Jacobs or order, the sum of twenty-eight 50-100 dollars only, out of the money in the treasury collected for assessments made in the year

1875 on all lot one, block thirty-five, Challiss's addition, for making sidewalks along said described property.

"'By order of the city council.    C. ROHR, *Mayor.*

[Seal of city.]    Attest:    N. A. MAHER, *Clerk.*'

"Another of said 'sidewalk bonds' was in all respects the same as the foregoing, except that it was numbered 303, and the property described was lot 1, block 36, Challiss's addition. And the other seven bonds were of like tenor and effect, except that they were upon other lots in said city.

"On August 6, 1875, said Henry Jacobs took said bonds to said cashier at said bank, and sold them to said bank through said cashier, and indorsed them in blank, and said bonds were paid for with the funds of the bank, and were placed among its securities; said Richard A. Park never claiming any individual interest therein, nor any interest except as an officer of said bank.

"9. The lots in controversy were vacant and unoccupied until about one month before this action was commenced, and on May 8, 1877, not having been redeemed from said sale of 1874, and not having been assigned, and the taxes of 1875 and 1876 not having been paid, said Richard A. Park, acting in his own name, but for the bank, took an assignment of the tax-sale certificates on each of said sales, turning in said sidewalk bonds to cover the sidewalk tax of 1875 and interest — the cost of redemption for taxes of 1874 and 1875 on lot 1, block 35, being $71.87, and on lot 1, block 36, being $73.97; and at the same time said Richard A. Park for and with the funds of the bank paid the taxes of 1876 on said two lots — being on lot 1, block 35, $6.45, and on lot 1, block 36, $7.15, which amounts were indorsed in the certificates of assignment.

"At the same time Richard A. Park in like manner took the assignment of certain other lots on which he held such sidewalk bonds, so that the total amount of such assignments, including the indorsed taxes of 1876, was $701.88, while said sidewalk bonds turned in amounted only to $363. The balance of $338.88 was paid in cash out of the funds of the bank, and said certificates of assignment were placed among the securities of the bank and charged to it and not to said Richard A. Park.

"10. On December 22, 1877, said Richard A. Park for said bank and out of its funds paid the taxes of 1877 on said lots — being on lot 1, block 35, $6.56, and on lot 1, block 36, $7.29, and said amounts were indorsed on the respective certificates of assignment.

"11. The notice of expiration of time for redemption published by the county treasurer on said sales, reads as follows:

"'NOTICE.— OFFICE COUNTY TREASURER, ATCHISON CO., ATCHISON, KANSAS, April 1, 1878.— Notice is hereby given that the following-described lands and town lots, situate in Atchison county, state of Kansas, were sold for delinquent taxes, penalties and charges for the year 1874, at a sale commenced September 7 and closed September 16, 1875. Unless such lands and lots owned by parties unknown shall be redeemed before the days limited therefor as specified, they will be conveyed to the purchaser.

"'Given under my hand the day, and year above written.

S. R. WASHER, *Treasurer Atchison County.*'

"Here follows a description of the unredeemed lands and town lots, including the lands in controversy, under date of September 16, 1878, and as being in 'Challiss's addition' (not L. C. Challiss's addition); the cost of redemption being stated as follows: on lot 1, block 35, $120, and on lot 1, block 36, $123.18. Said notice was published in the *Patriot,* the official weekly newspaper, on April 6, April 13, April 20, April 27, and May 4, 1878; and affidavit was made thereto and filed in the office of the county clerk May 6, 1878.

"12. On September 23, 1878, said Richard A. Park assigned each of said certificates of assignment to said Atchison Savings Bank, and on September 24, 1878, at his request as cashier of said bank, the county clerk of said county of Atchison executed and delivered to said bank and in its name for it and its successors and assigns, a separate tax deed upon each of said lots for the taxes of 1874, 1875, 1876 and 1877, the consideration recited in each deed being as follows: for lot 1, block 35, Challiss's addition, $84.88, and for lot 1, block 36, Challiss's addition, $88.41; said deeds were duly acknowledged, and they were each recorded in the office of the register of deeds of said county of Atchison, September 25, 1878. The costs of deeds and recording same were $5.40, being $2.70 each.

"13. On December 20, 1878, said bank paid the first half of the taxes of 1878 on said lots, being on lot 1, block 35, $2, and on lot 1, block 36, $2.62; and on June 20, 1879, said bank paid the second half of the taxes for 1878 on said lots, being on lot 1, block 35, $2, and on lot 1, block 36, $2.63; on December 20, 1879, said bank paid the first half of the taxes of 1879 on said lots, being on lot 1, block 35, $2.07, and on lot 1, block 36, $2.32; and on June 20, 1880, said bank paid the second half of the taxes for 1879 on said lot 1, block 35, being $2.07; but the bank did not pay the second half of the taxes of 1879 on said lot 1, block 36, being

$2.32, the same having been paid by said L. C. Challiss June 15, 1880. It further appears that on June 15, 1880, said L. C. Challiss paid the full taxes for 1879 on said lots, being on lot 1, block 35, $4.14, and on lot 1, block 36, $4.64, including the $2.32 before mentioned; and on December 20, 1880, said L. C. Challiss paid the first half of the taxes of 1880 on said lots, being on lot 1, block 35, $23.53, and on lot 1, block 36, $23.53.

"14. The second half of the taxes on said lots for 1880 not being paid, the lots were sold separately at tax sale by the county treasurer, September 6, 1881, to F. T. Walker, said lot 1, block 35, for $24.90, and said lot 1, block 36, for $24.90; on March 29, 1883, said F. T. Walker paid the taxes of 1882 on said lot 1, block 35, and the same was indorsed on his certificate of sale. The taxes on said lot 1, block 36, for 1881, $5.19, and for 1882, $5.75, were paid by said F. T. Walker, and duly indorsed on his certificate of sale. On August 15, 1883, said L. C. Challiss redeemed said lots from said sales and taxes indorsed, by paying into the county treasury in cash an amount equal to the cost of redemption — and cost of the redemption certificate — the amount so paid on said lot 1, block 35, being $44.95, and on said lot 1, block 36, $49.45.

"15. Before June 2, 1883, said F. T. Walker had sold and transferred the two tax-sale certificates referred to in conclusion of fact 14, to said Atchison Savings Bank, and said bank was the owner and holder thereof. And on or shortly before said date, said bank entered into an arrangement with L. F. Bird and H. M. Jackson, defendants, both attorneys at law in Atchison, whereby they agreed to get as much as they could out of said two lots for said bank on account of said two tax deeds and said two tax certificates so held by said bank; and in consideration of their services, said L. F. Bird and H. M. Jackson were to receive 15 per cent. of the amount realized, and they were to pay the remaining 85 per cent. to said bank. And as a part of said arrangement, said bank, by its proper officers, executed a deed of conveyance of said two lots on June 2, 1883, to said H. M. Jackson, and said deed was duly delivered to said H. M. Jackson, who filed the same for record in the office of the register of deeds of this county on June 5, 1883. Said H. M. Jackson paid nothing for said deed, nor for said lots, and never agreed to pay anything therefor, except as he was to pay 85 per cent. of the amount realized as aforesaid. The two tax-sale certificates purchased

by said bank from said F. T. Walker were by the same arrangement placed in the hands of said L. F. Bird by said bank. About August 3, 1883, said H. M. Jackson and L. F. Bird took actual possession of said lots, by fencing up and using each of the same — said lots having theretofore been always vacant and unoccupied.

"16. On July 30, 1884, said L. F. Bird, for and on behalf of said bank, and under the arrangement stated in conclusion of fact 15, applied to the county treasurer for the redemption-money paid in by said L. C. Challiss August 15, 1883, as stated in conclusion of fact 14, and said L. F. Bird received the same for said bank — the amount being $93.90.

"17. On March 20, 1884, said L. C. Challiss paid the taxes on said lots for 1883, being on lot 1, block 35, $8.43, and on lot 1, block 36, $4.67.

"18. Said bank did not purchase said tax-sale certificates and obtain said deeds with a view of using said real estate for any of the purposes of the bank, but for the purposes of investment and profitable speculation only.

"CONCLUSIONS OF LAW.

"1. At the commencement of this action, and at the time the plaintiff filed his supplemental reply, the plaintiff was the owner of the real estate in controversy, and the defendants unlawfully kept him out of the possession of the same.

"2. The plaintiff is entitled to recover the real estate in controversy, and costs of suit.

"3. The defendants are not entitled to any relief under the answer and cross-petition of said H. M. Jackson."

There are specific objections to the validity of the tax deeds, and they consist of: First, the lots are described in the tax-rolls as being in "Challiss's addition," when as a matter of fact the addition was platted as "L. C. Challiss's addition;" but it has been commonly called and known as "Challiss's addition." Second, in 1874 these lots were assessed by George W. Graves as city assessor, and it is claimed that the affidavit to the return of the assessor states no venue, and is defective in other respects. Third, that there was an overcharge in the amount of the costs of the tax sale of each of the two lots. Fourth, that the tax-sale notice was defective in the description of the property as being in "Challiss's addition," instead of in "L. C. Challiss's addition." Fifth, that there is no

proof of the publication of the notice of tax sale on file in the office of the county treasurer, and the proof on file in the office of the county clerk is without date or indorsement of filing, and is otherwise defective.

I. There are two objections to the tax deeds that under the recent decisions of this court are fatal, and hence they are the only ones that need now to be noticed; and they are, that there are sums included in the taxes for which the lots were sold, that were not charges against them, and were in excess of the proper taxes upon the lots, and a sufficient time was not given for redemption. There was included in the amount for which the lots were sold, a charge of ten cents on each lot for publishing the delinquent tax list and notice of sale. The taxes levied upon lot 1, block 35, for the year 1874 were $9.26, and the three penalties before the sale amounted to $1.38, making a total of taxes and penalties of $10.64. The taxes levied upon lot 1, block 36, for the year 1874 were $9.81, and the three penalties before the sale were $1.47, making a total of taxes and penalties of $11.28. At the tax sale the county treasurer bid them off for the county of Atchison, lot 1, block 35, for the sum of $10.84, and lot 1, block 36, for $11.48. This statement conclusively shows that there was added to the taxes and penalties the sum of ten cents on each lot for the treasurer's fee for the certificate of sale, and ten cents on each lot for publication fees for advertising notice of tax sale. The only proof of publication of the notice of sale was found in the county clerk's office, there being no proof of publication found in the county treasurer's office, and no other proof of publication was offered on the trial but that found in the county clerk's office, and that was without date or indorsement of filing. This consisted of an affidavit attached to the notice of publication made by F. J. Wendell, as business manager of the Atchison *Champion*, on the 16th day of August, 1875. The tax law requires the proof of publication to be transmitted to the county treasurer immediately after the publication thereof, and if said proof is not transmitted within fourteen days after the last publication, the

printer shall not be paid for such publication. No proof of publication is found in the county treasurer's office, and the costs of advertising the lots never became a charge against the

1. Void tax deeds. county, and if the fees for advertising the sale never became a charge against the county, it cannot become a charge against the lots, and the tax deeds are void. This is settled by the cases of *Fox v. Cross*, 39 Kas. 350, and *Blanchard v. Hatcher*, 40 id. 350, 20 Pac. Rep. 15.

The notice of redemption was as follows:

"OFFICE OF COUNTY TREASURER, ATCHISON CO., ATCHISON, KAS., April 1, 1878.— Notice is hereby given, that the following-described lands and town lots, situate in Atchison county, state of Kansas, were sold for delinquent taxes, penalties and charges for the year 1874, at a sale commenced September 7 and closed September 16, 1875. Unless such lands and lots, owned by parties unknown, shall be redeemed before the days limited therefor as specified, they will be conveyed to the purchaser.

"Given under my hand, the day and year above written.
S. R. WASHER, *Treasurer Atchison Co.*"

The owner has three years from the day of sale to redeem, (tax law, § 127,) and it has been universally held by this court,

2. Voidable tax-sale notice. that such a notice was fatally defective. It is not specific, definite, or correct. Adopting the language of BREWER, J., in the case of *Blackistone v. Sherwood*, 31 Kas. 35: "Who can tell from this notice alone when the time of redemption will expire?" On the 7th of September, or on the 16th day of that month? The day of sale is not specified as the statute requires. The record shows that the sale of these lots for delinquent taxes occurred on the 16th day of September, 1875. In the computation of the statutory period within which a redemption from sale could be made, the day of sale must be excluded. See generally the cases of *Hollenback v. Ess*, 31 Kas. 87; *English v. Williamson*, 34 id. 212; *Cable v. Coates, Assignee*, 36 id. 191; *Hill v. Timmermeyer*, 36 id. 252.

II. The only remaining question is as to whether the plaintiffs in error are entitled to relief under the answer and

cross-petition of H. M. Jackson. This prayed that in the event that said tax deeds or either of them be adjudged to be invalid, then that the taxes and charges so paid under said invalid deed or deeds, and since that time, and the value of the improvements made on said lots by the tax-purchasers, may be adjudged a first lien upon said lots respectively, and that the plaintiff be adjudged to pay the same before he is let into the possession of said lots. The judgment of the court below was, that the tax-purchasers or their assigns were not entitled to such relief. No specific reason is given for this conclusion, and we are left to gather from the facts alone the considerations upon which it was made. The first supposition that can be indulged in as tending to support the judgment in this respect, is because the Atchison Savings Bank, a corporation organized under article 16, chapter 23, General Statutes, has no authority or power to take a tax deed. Admitting this to be true, and yet there is such a failure of title by reason of it, that the bank is protected by the sweeping and vigorous terms of § 142 of the tax law, and the construction universally given that and a similar provision by this court in the cases of *Smith v. Smith,* 15 Kas. 290; *Fairbanks v. Williams,* 24 id. 16; *Coe v. Farwell,* 24 id. 566; *Estes v. Stebbins,* 25 id. 315; *Arn v. Hoppin,* 25 id. 707; *Russell v. Hudson,* 28 id. 99; *Belz v. Bird,* 31 id. 139.

The only remaining reason for such a conclusion of law is founded on this state of facts: On the 24th day of September, 1878, the county clerk issued to the Atchison Savings Bank a separate tax deed to each of said lots, for the delinquent taxes of 1874, and this included the taxes of 1875, 1876 and 1877. On the 20th day of December, 1878, the bank paid the first half of the taxes of 1878, and on June 20, 1879, paid the second half of the taxes of 1878. On the 20th day of December, 1879, the bank paid the first half of the taxes of 1879 on said lots, and on the 20th day of June, 1880, the bank paid the second half of the taxes on lot one, block 35, but did not pay the second half of the taxes on lot 1, block 36, for 1879, the sum having been paid by L. C. Challiss

on the 15th day of June, 1880. It further appears that L. C. Challiss paid the full taxes for the year 1879 on both lots, on the 15th day of June, 1880. On the 20th day of December, 1880, Challiss paid the first half of the taxes of that year on both lots. The second half of the taxes of 1880 not having been paid by anyone, the lots were sold separately at the tax sale, by the county treasurer, September 6, 1881, to F. T. Walker. He paid the taxes of 1881 and 1882. On the 15th day of August, 1883, L. C. Challiss redeemed the lots from the sale to Walker, paying on lot 1, block 35, $44.95, and on lot 1, block 36, $49.45. Before the 2d day of June, 1883, Walker had assigned the two tax-sale certificates held by him, to the Atchison Savings Bank, and about that time the bank had made an agreement with the plaintiffs in error, both attorneys at law in the city of Atchison, whereby they agreed to get as much as they could out of said two lots for said bank on account of said two tax deeds and said two tax certificates, and in consideration of their services were to receive fifteen per cent. of the amount realized, and pay the remaining eighty-five per cent. to the bank. As a part of this arrangement, deeds were executed by the bank to H. M. Jackson, conveying the lots to him, and the two certificates of sale were delivered to L. F. Bird. They paid nothing to the bank for the deeds or certificates, nor ever agreed to pay anything except as above recited. On the 30th day of July, 1884, Bird for and on behalf of the bank, and under the arrangement stated, applied to the county treasurer for the redemption-money paid in by Challiss on the 15th of August, 1883, and received the money for said bank from the county treasurer, amounting to $93.90.

It is claimed on these facts as found by the trial court, that these plaintiffs in error, as representatives of the bank, are estopped in this action from asserting title to these lots, and are estopped from asserting any lien on the premises by reason of their tax deeds for the taxes of 1874, and the subsequent years for which they paid the taxes. The argument in support of this contention is founded on §§ 127 and 130 of the

tax law.   Only the owner may redeem, and only the owner
of the tax-sale certificate is entitled to demand and receive the
redemption-money; and to entitle him to receive this redemp-
tion-money, he must surrender his claim on the land.   He
cannot claim both to be the owner and to be entitled to the
redemption-money; hence, when Bird, as the representative
of the bank, applied for and received the redemption-money
paid in by Challiss in August, 1883, by his application for
and the reception of the redemption fund, he acknowledged
that Challiss was the owner of the lots.   If the bank claimed
ownership by virtue of the sale for taxes for 1874, the legal
obligation of the bank was to pay the taxes represented by
the redemption fund; but to get that redemption it not only
admitted that Challiss was the owner, but also asserted by its
act that the bank was not owner.   It would seem as if the
bank was estopped from asserting title to the lots against
Challiss after it had applied for and received the redemption
fund; but as we have already held that the deed was void be-
cause of having been sold for a sum in excess of the legal
charges against the lots, and because no sufficient notice of
redemption was given, it is not necessary to expressly decide
that question, but to consider it only so far as it applies to a
denial of the relief sought, by establishing a lien for taxes
paid.   If the plaintiffs in error are entitled to a lien under
§ 142 of the tax law, it will be for the amount of taxes paid
on said lots, with interest and costs as allowed by law up to
the date of said tax deeds, including the costs of the tax deeds
and the recording of the same, and the further amount of the
taxes paid after the date of said deed, with interest.   In other
3. Lien for          words, they are entitled to a lien for the taxes of
    taxes paid.      1874, 1875, 1876, 1877, 1878, and the first half
of the taxes of 1879 on both lots, and the second half of the
taxes for that year on lot one, block thirty-five, with costs,
interest and fees for making and recording tax deeds.

Does the fact that the bank, by the action of its representa-
tive in the reception of the redemption fund, has placed itself
in such a position that it cannot now be heard to say that

Challiss is not the owner of the lots, affect in any manner its claim for a lien on the lots of the owner for taxes paid on the lots, with costs and interest? The admission of ownership in Challiss only goes to his title, and not to the extent that there are no liens against the lots. The tax deeds, however void, gave color of title enough to the bank as a purchaser at a tax sale to pay the subsequent taxes. The payment by the bank cannot be considered as a wholly voluntary one by a stranger to the title, because belief in that title is expressed in the act of the institution of this suit, and because the tax deed is evidence of title, and because the assignment to the bank of the tax certificates of sale that subsequently ripened into the deed for the taxes of 1874 gave them some interest in the lots. The sale for the unpaid second half of the taxes for 1880 never ripened into a tax deed, because of the redemption by Challiss as authorized by law. The county had no claim on this money, because it had been paid by Walker, and he could have received it without creating an estoppel, and he or his assigns are the only persons to whom the county treasurer was authorized to pay it. Its reception by Bird was an acknowledgment that the lots had been legally redeemed from the tax sale of 1881, and that Bird and those he represented had no rights under that sale. We think this is the extent of the operation of the reception of the redemption-money paid in by Challiss, and that it does not estop the plaintiffs in error from asserting and securing all their rights under § 142 of the tax law. (*Cooper v. Bushley*, 72 Pa. St. 252; *Gray v. Coan*, 30 Iowa, 536.)

*4. Redemption: estoppel; lien; title.*

The trial court erred in its third conclusion of law, and for this reason we recommend that the cause be remanded to the district court, with instructions to render a judgment in favor of Challiss for the possession of the lots, and to proceed to adjust the lien of the plaintiffs in error for the taxes paid on said lots, with interest and costs. The costs in this court will be divided between the parties.

By the Court: It is so ordered.

All the Justices concurring.